The **PEOPLE** of the State of Colorado, Petitioner–Appellee,

In the Interest of A.D.T., Juvenile–Appellant.

No. 09CA0848.

Colorado Court of Appeals, Div. II.

April 29, 2010.

---

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Michele Westerlund, Deputy State Public Defender, Denver, Colorado, for Juvenile–Appellant.

Opinion by Judge GABRIEL.

A.D.T., a minor, appeals her adjudications for acts that, if committed by an adult, would constitute unlawful sexual contact and harassment. Because we conclude that the juvenile court erred by failing to review in camera eight of the nine Department of Human Services (DHS) files of the victim in this case, by failing to disclose certain documents from the file that it did review, and by failing to make sufficient findings to support its refusal to disclose other documents, we reverse the juvenile court's judgment and remand for further proceedings.

## I. Background

On September 28, 2008, both A.D.T. and the victim were minors living in the Family Crisis Center (the Center). That day, A.D.T. was in the lobby of the Center when the victim returned from a game of kickball. A.D.T. allegedly stopped the victim and prevented her from returning to her unit. The girls then played tag and at some point danced. While they were dancing, A.D.T. allegedly touched the victim's breasts and vagina over her clothes.

Thereafter, a supervisor came to the lobby and discovered that the victim was there without authorization. The supervisor escorted the victim from the room, leaving A.D.T. behind. The victim then reported the incident to the supervisor, telling the supervisor that A.D.T. had warned her that if she told anyone what had happened, A.D.T. would kill her.

The supervisor contacted her superior and the Denver Police Department, and A.D.T. was arrested and taken into custody. A juvenile delinquency petition was subsequently filed, charging A.D.T. with unlawful sexual contact. The petition was later amended to add a second count of harassment.

Prior to trial, defense counsel learned that the victim may have sexually assaulted someone on a prior occasion. Counsel noted that this incident would "obviously" be in the DHS files of the victim's family, and counsel requested that the juvenile court review these files in camera and disclose any pertinent records. Counsel asserted particularly that such records might (1) show that the victim understood how allegations of sexual assault were made, which would rebut any expert testimony that children do not fabricate allegations of sexual assault on their

own; (2) show whether the victim, rather than A.D.T., was the perpetrator; (3) provide information relevant to the victim's credibility; and (4) include prior false allegations of sexual assault made by the victim.

The prosecution objected to defense counsel's request, arguing that counsel's proffer was not specific enough and that counsel was engaged in a fishing expedition. The court, acting through a senior judge who was assisting the juvenile court judge assigned to the case, implicitly rejected the prosecution's assertion and found that A.D.T.'s offer of proof was sufficient to warrant in camera review of the DHS records. Because the DHS records concerning the victim's family comprised nine volumes, however, the court decided that only the most recent volume would be reviewed, notwithstanding defense counsel's contention that earlier files might contain relevant information. Specifically, the court noted that it made sense to narrow the review because it would otherwise become "overly oppressive."

The court then ordered that the DHS records would be reviewed by the juvenile court judge who was presiding over both this case and the dependency and neglect proceedings concerning the victim's family and who was thus knowledgeable about the DHS records. That judge subsequently reviewed the ninth volume of the DHS records and determined, based on her "limited knowledge of the prosecution and defense cases," that there was no basis to conclude that any of the material contained in that volume was discoverable.

Also prior to trial, defense counsel sought disclosure of a security video that was taken of the lobby of the Center at the time of the alleged incident. After viewing the video, the juvenile court judge entered an order allowing the parties to see it. The court further ordered the video to be available on the day of trial. The parties subsequently stipulated to the admission of the video into evidence. At trial, however, a senior judge, who was then presiding over the case, noted that he could not tell anything from the video. Thus, the court refused to admit the video into evidence or to allow defense counsel to use it to impeach the victim.

At the conclusion of the trial, which substantially turned on the respective credibility of A.D.T. and the victim, the juvenile court found A.D.T. guilty of both charges against her. A.D.T. now appeals.

## II. DHS Records

A.D.T. first contends that the juvenile court abused its discretion in reviewing only one of the nine available DHS files and in failing to allow her access to those documents that might be necessary for the determination of an issue before the court. We agree.

### A. Failure to Review All Records

■ We review a trial court's resolution of discovery issues for an abuse of discretion. *People v. Denton,* 91 P.3d 388, 391 (Colo.App. 2003).

■ "There is no general constitutional right to discovery in a criminal case. . . ." *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). To satisfy due process requirements under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), however, a defendant must be provided with any information that is favorable to him or her and that is material to guilt or punishment. *People v. Bachofer,* 192 P.3d 454, 461 (Colo.App.2008).

■ If the state has an interest in the confidentiality of certain sensitive information, such as files regarding dependency and neglect proceedings, the court must balance that interest against the defendant's constitutional right to discover favorable evidence. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 57–60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). The Supreme Court has held that in these circumstances, the defendant's interests can be adequately protected by requiring that such files be submitted to the trial court for in camera review. *Id.* at 60, 107 S.Ct. 989. After such review, the court must release information that is material to the fairness of the trial. *Id.*

■ Consistent with these principles, and as pertinent here, section 19–1–307(2)(f), C.R.S.2009, provides that a court may review DHS records in camera if it concludes that the information contained therein "may be

necessary for determination of an issue before [it]." The court should approach this threshold inquiry liberally and conduct an in camera review whenever it reasonably appears that the records may contain discoverable information. *People v. Jowell*, 199 P.3d 38, 43 (Colo.App.2008). Indeed, a court may violate a defendant's due process rights by failing to do so. *See Exline v. Gunter*, 985 F.2d 487, 490 (10th Cir.1993) (applying Colorado law and holding that trial court's failure to review department of social services records in camera violated the defendant's due process rights).

■ If, after completing its review, the court determines that disclosure of the information contained in the DHS records is "necessary for the resolution of an issue then pending before it," the court is authorized to disclose that information to the parties. § 19–1–307(2)(f). Such disclosure, however, is not automatic or self-executing. *Jowell*, 199 P.3d at 42. Rather, to obtain disclosure of DHS records, "the defendant must request an in camera review, identify the type of information sought, and explain why disclosure of that information 'is necessary' under [section 19–1–307(2)(f) ]." *Id.*

■ Although a court's decision to disclose DHS records is necessarily fact specific, *id.* at 43, several observations apply generally. First, under the due process principles discussed above, the court must disclose any information that is materially favorable to the defendant because it is either exculpatory or impeaching. *Id.* Second, although not required to satisfy a defendant's due process rights, the court should also disclose inculpatory information that would materially assist in preparing the defense. *Id.* Third, it may be significant, although not necessarily determinative, that the records contain information that, but for the particular statutory requirements for DHS records, would be subject to automatic disclosure under Crim. P. 16(1)(a)(1). *Id.*

■ A court's erroneous failure to disclose documents pursuant to the above-described procedure does not, in and of itself, establish prejudice or reversible error. To obtain a new trial for a discovery violation, a defendant must show a reasonable likelihood that the verdict would have been different had the pertinent information been disclosed before trial. *Id.* at 47; *see also Strickler v. Greene*, 527 U.S. 263, 280–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (a due process violation occurs only when (1) the state suppresses evidence that is "favorable to the accused, either because it is exculpatory, or because it is impeaching," and (2) had this evidence been disclosed to the defense, there is a reasonable probability that the result of the proceeding would have been different); *United States v. Bagley*, 473 U.S. 667, 677, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (a new trial is not required when the prosecution has failed to disclose evidence that may have been useful to the defense but that would not likely have changed the verdict).

■ Applying these principles here, we conclude for two reasons that the juvenile court abused its discretion when it chose to review only the last of the nine volumes of DHS records.

First, as noted above, the juvenile court necessarily determined that A.D.T. had made a sufficient showing to warrant in camera review of those records. Once the court had made that determination, it was obligated to review all of the records, notwithstanding the fact that such review may have imposed a significant burden on the juvenile court, which burden we fully acknowledge and do not intend to trivialize. *See Jowell*, 199 P.3d at 43 (recognizing that section 19–1–307(2)(f) imposes a "significant" burden on trial courts because in camera reviews may be "time consuming and difficult").

Second, because section 19–1–307(2)(f) authorizes only the juvenile court to review the DHS records in a case like this, only the court could determine whether any of such records might be necessary to the determination of an issue before it. Accordingly, it was particularly important that the court review all of the available records, once A.D.T. had made the requisite showing to warrant such review.

For these reasons, we remand this case to the juvenile court with directions that the court conduct an in camera review of the

eight volumes of DHS records that it did not previously review, to determine whether any of the information contained therein might have been necessary to the determination of an issue before it. Should the court identify any such information, then, because A.D.T. bears the burden of establishing prejudice, *see Jowell,* 199 P.3d at 47, the court shall disclose the pertinent documents to the parties and give A.D.T. an opportunity to demonstrate a reasonable probability that, had these records been disclosed to her, the result of the proceeding would have been different. *See People v. Hustead,* 74 Cal. App.4th 410, 87 Cal.Rptr.2d 875, 884–85 (1999) (adopting such a procedure on similar facts, and holding, "On remand, the appellant will have an opportunity to determine if he would have been able to present any additional evidence at trial as a result of any discoverable information."); *see also United States v. McGowan,* 423 F.2d 413, 418–19 (4th Cir.1970) (in a case involving grand jury minutes, the court opined that once it had determined that certain of those minutes should have been disclosed to the defense, the appropriate procedure was for defense counsel to review those minutes to determine what in them was "useful"); *Commonwealth v. French,* 531 Pa. 42, 611 A.2d 175, 179–80 (1992) (the question of prejudice resulting from the trial court's erroneous failure to order the production of certain witness statements to the defendant should not be determined without first permitting defense counsel to view the statements in question with the eye of an advocate and to argue to the trial court their impeachment value).

We leave to the juvenile court's discretion the manner in which it will afford A.D.T. the opportunity to make the requisite showing of prejudicial error, including whether to hold a hearing or to take additional evidence. If the court concludes that it is reasonably probable that the result of the trial would have been different, then it must grant A.D.T. a new trial. If it finds no such reasonable probability, then, pending the issues discussed below, the court would be free to reinstate its adjudication, subject to A.D.T.'s right to appeal.

In making the foregoing determination as to whether any records that should have been disclosed warrant a new trial, the court should consider, among other things:

- whether these records, or any portions of them, would have been admissible under the rape shield procedures set forth in section 18–3–407, C.R.S.2009;
- whether these records, or any portions of them, would have been admissible under CRE 403; and
- whether A.D.T. knew, or could reasonably have discovered elsewhere, the information contained in the undisclosed records. *See People v. Graham,* 678 P.2d 1043, 1048 (Colo.App.1983) (failure to produce certain test results to the defendant did not warrant reversal when the defendant knew the results of the test at issue several months before trial).

In light of our disposition, A.D.T.'s motion to reconstruct or supplement the record with the eight unreviewed volumes is moot.

### B. Failure to Disclose Any Records from Volume Nine

A.D.T. next argues that the juvenile court abused its discretion by refusing to disclose any of the information contained in volume nine of the victim's DHS records, which the court reviewed. A.D.T. further argues that the court's refusal to do so warrants a new trial. To address these issues, we must first determine, in light of *People v. Wittrein,* 221 P.3d 1076, 1083 n. 5 (Colo.2009), whether we may conduct our own in camera review of the documents at issue. If so, and if we conclude that the juvenile court abused its discretion in failing to disclose relevant documents, then we must decide whether we may determine in the first instance whether a new trial is required, or whether a remand is necessary.

We conclude that *Wittrein* did not foreclose our own in camera review here and that the juvenile court erred in refusing to order disclosure of certain DHS records that were exculpatory or impeaching. We further conclude that certain other DHS records appear to satisfy the above-noted requirements for disclosure because they would materially

assist in preparing the defense. Because the disclosure of such records is discretionary, however, we remand the case to the juvenile court to reconsider whether these records should be disclosed and to make specific findings, should the court determine that they should not. Finally, we conclude that we must remand this case to the juvenile court to determine in the first instance whether a new trial is warranted.

In *Wittrein,* 221 P.3d at 1082–83, the defendant subpoenaed certain of the victim's mental health records, which the victim claimed were protected under the psychologist-patient privilege. The trial court quashed the subpoena, finding, among other things, that the privileged nature of the records at issue prevented it from reviewing these records, in camera or otherwise. *Id.* at 1083.

A division of this court upheld the decision to quash the subpoena based on its own in camera review, rather than on the basis of privilege. *Id.* Our supreme court granted certiorari and ultimately agreed with the trial court's conclusions that the records were privileged and that the privilege prevented any in camera review. *Id.* at 1083–84. In so holding, the court rejected the defendant's claim that the division of the court of appeals had applied an incorrect legal standard in the course of its in camera review, finding that any such error was irrelevant, because the privileged records should not have been reviewed at all. *Id.* at 1084.

As pertinent here, in the course of its discussion, the supreme court noted in a footnote and without elaboration, "In camera review should be the province of the trial judge and not appellate courts. Therefore, absent exceptional circumstances, cases normally should be remanded to the trial court for an in camera review." *Id.* at 1083 n. 5 (citing *People v. Kyle,* 111 P.3d 491 (Colo. App.2004), a case in which the trial court failed to review the DHS files there at issue).

The supreme court's comment, although dictum, raises the question of whether we may properly perform our own in camera review of the file that the juvenile court reviewed in this case. Because we view *Wit-*

*trein* as distinguishable, we conclude that we may do so.

As noted above, in *Wittrein,* the records at issue were privileged, and, thus, even the trial court was precluded from reviewing them. *Id.* at 1084. Moreover, because the records were privileged, the defendant had no due process right to discover them. *Id.* at 1084 n. 7; *see also People v. Tauer,* 847 P.2d 259, 261 (Colo.App.1993) (noting that a victim's post-assault psychotherapy records are privileged, and, absent waiver, a defendant may not compel their discovery).

The present case, unlike in *Wittrein,* does not involve any questions of absolute privilege. Rather, it involves A.D.T.'s due process and statutory rights to obtain documents that are exculpatory and impeaching and that may materially assist her defense. Moreover, unlike in *Wittrein,* the juvenile court here reviewed one file of DHS records, and A.D.T. is challenging the trial court's disclosure determinations. Thus, the propriety of the juvenile court's disclosure decisions is squarely before us on appeal.

Although we have found no published Colorado appellate decision discussing the procedures to be employed in a case like this one, the Georgia Supreme Court's decision in *Wilson v. State,* 246 Ga. 62, 268 S.E.2d 895, 898 (1980), is instructive. In *Wilson,* the court addressed how a defendant is to preserve disclosure issues for appeal in a case involving a trial court's in camera review. The court also addressed an appellate court's authority to conduct its own in camera review. The court held that after the trial court conducts its in camera review of the confidential material at issue, the defendant should move to have the material sealed and filed or otherwise preserved for appellate review. *Id.* Thereafter, the appellate court may properly exercise its discretion to review the preserved evidence in camera, pursuant to the defendant's showing of cause. *Id.*

We agree with the *Wilson* court's determination and conclude that in a case like this, in which the juvenile court has performed an in camera review and made disclosure determinations that are properly being challenged on appeal, the right to meaningful appellate review necessitates our performing an indepen-

dent in camera review. For the reasons set forth above, we do not believe that *Wittrein* suggests otherwise.

Accordingly, we have reviewed volume nine of the DHS records, which are the documents that the juvenile court reviewed. Based on our in camera review, we conclude that the court erred in failing to disclose the following records pursuant to section 19–1–307(2)(f), because these records were exculpatory or impeaching under *Brady* (we do not describe these records specifically due to their confidential nature):

- Critical Incident Report regarding incident that occurred on 8/26/08 at 8:30 a.m. and that was discovered on 8/27/08 at 9:30 a.m., five pages (Sealed Envelope Appellate Volume 1).
- Referral Information Sheet, Denver County, 5/24/08, 5:09 p.m., Reporter Narrative (Sealed Envelope Appellate Volume 1).
- Family Crisis Center Service Plan Review, date of review: 9/10/08, "Presenting Problem(s)" (Sealed Envelope Appellate Volume 3).

In addition, the following documents appear to fall within the category of evidence that *should* have been disclosed under *Jowell*, because they could have led to the meaningful impeachment of the victim's credibility, or because they could have supported A.D.T.'s theory of defense:

- Contact/Visit Log, 4/18/08, 12:50 p.m., second paragraph (Sealed Envelope Appellate Volume 1).
- Case Contact/Visitation Log, 12/5/06, 4:46 p.m., last update date: 12/14/06, 3:56 p.m., second paragraph (Sealed Envelope Appellate Volume 1).
- Report to Juvenile Court, Family Services Plan, Part 2: Family Social History & Assessment Summary, hearing date: 12/17/08 at 10:00 a.m., p. 4 of 18, first paragraph (Sealed Envelope Appellate Volume 1).
- Referral/Assessment Summary, Referral ID 1866973, 8/11/06, 12:45, p. 4 of 8, final paragraph, referring to 8/15/06, 11:30 a.m. (Sealed Envelope Appellate Volume 1).

- Contact/Visit Log, 7/1/08, 10:30 a.m., regarding worker visit (Sealed Envelope Appellate Volume 2).
- Contact/Visit Log, 11/ 13/07, 3:38 p.m., regarding worker visit (Sealed Envelope Appellate Volume 2).
- Case Contact/Visitation Log, 5/30/07, 9:30 p.m., p. 19 of 26 (Sealed Envelope Appellate Volume 2).
- Mental Health Sex Offense Specific Evaluation, dated 10/ 14/08, eight pages (Sealed Envelope Appellate Volume 3).

As to these records, which fall within the category of documents that may materially assist the defendant, as opposed to documents that are exculpatory or impeaching within the meaning of *Brady, Jowell,* 199 P.3d at 43, makes clear that the juvenile court has discretion regarding disclosure. The juvenile court, however, made no findings as to why it refused to order the disclosure of these documents. Accordingly, we do not have sufficient information to allow for meaningful appellate review. Thus, we remand to the juvenile court with directions that it reconsider whether these eight listed records should be disclosed and to make specific findings supporting any decision not to disclose such records.

As to those documents that the juvenile court erroneously failed to disclose to the parties and those documents that the court decides on remand must be disclosed, the question becomes whether the failure to disclose such documents previously entitles A.D.T. to a new trial. We conclude that the juvenile court must consider this issue in the first instance on remand.

Specifically, for the reasons discussed above in connection with the unreviewed eight volumes of DHS records, on remand, the court should disclose the above-listed records to the parties. The court should then give A.D.T., who bears the burden of establishing the right to a new trial, *see Jowell,* 199 P.3d at 47, the opportunity to demonstrate a reasonable probability that, had these records been disclosed, the result of the proceeding would have been different. *See McGowan,* 423 F.2d at 418–19; *Hustead,* 87 Cal.Rptr.2d at 884–85; *French,* 611 A.2d

at 179–80. We again leave to the juvenile court's discretion the manner in which it will afford A.D.T. this opportunity. If the court concludes that there is a reasonable probability that the result of the trial would have been different, then it must grant A.D.T. a new trial. If it finds no such reasonable probability, then it may reinstate its adjudication order, subject to A.D.T.'s right to appeal.

In making the determination as to whether A.D.T. is entitled to a new trial, the court again should consider the factors discussed in subsection A, above.

## III. Security Video

Finally, A.D.T. asserts that the juvenile court erred in refusing to allow her to introduce into evidence or otherwise use the security video at trial. Specifically, A.D.T. sought to use the video to impeach the victim's initial testimony that she did not attempt to slap A.D.T.'s buttocks during the incident at issue. A.D.T. also sought to use the video to show that although she and the victim were dancing and engaging in innocent horseplay, she did not sexually assault the victim. Should the juvenile court determine that A.D.T. is entitled to a new trial, this issue will likely arise again. Accordingly, we address it here and conclude that any error in the juvenile court's decision to preclude the use of the video was harmless.

A trial court "has broad discretion in determining the admissibility of tape recordings, and their admission will not be disturbed on appeal in the absence of an abuse of discretion." *People v. Jeffers*, 690 P.2d 194, 198 (Colo.1984). Moreover, a court does not err in excluding a recording that is of insufficient quality. To the contrary, it may be error for the court to admit such a recording. *See People v. Odneal* 192 Colo. 382, 385, 559 P.2d 230, 232 (1977) (" 'Should the garbled portions be so substantial, in view of the purpose for which the tapes are offered, as to render the recording as a whole untrustworthy, admissibility will be denied.' ") (quoting *United States v. Young*, 488 F.2d 1211, 1214 (8th Cir.1973)). However, "[a] partially inaudible videotape containing

relevant evidence should be excluded only 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.' " *State v. Rossignol*, 580 A.2d 152, 154 (Me.1990) (quoting Me. R. Evid. 403, which is identical to CRE 403).

Here, the juvenile court, sitting as the finder of fact, reviewed the video and concluded that it was unhelpful because it was difficult to discern what was happening on the tape. Although we have viewed the video and might have ruled otherwise with respect to the evidentiary question, in the circumstances of this case, we conclude for two reasons that any error in refusing to allow A.D.T. to introduce the video was harmless.

First, as noted above, A.D.T. sought, in part, to use the video to impeach the victim's testimony that she did not attempt to slap A.D.T.'s buttocks. The victim, however, was recalled as a witness later in the trial and changed her testimony, unequivocally and repeatedly admitting that she did so. Accordingly, the video would have been cumulative.

Second, the court, sitting as the finder of fact, viewed the video and found it to be unhelpful, because the picture was "so unclear and so small that [the court] was unable to gain anything out of ... [it]." In these circumstances, it is clear that even had the court admitted the video into evidence, it would have made no difference to the court's assessment of the evidence.

## IV. Conclusion

For these reasons, the judgment of the juvenile court is reversed and the case is remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge BOORAS concur.