The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**James Len HARMON, Defendant–Appellant.**

No. 08CA2156.

Colorado Court of Appeals, Div. IV.

Oct. 13, 2011.

Rehearing Denied Nov. 10, 2011.

John W. Suthers, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Lynn Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, James Len Harmon, appeals his conviction for knowing or reckless child abuse. We conclude that the trial court erred in failing to take corrective action after a juror submitted a note suggesting that he or she had determined Harmon's guilt based on a misperception that Harmon had conceded guilt in opening statement. Because we cannot say that this error was harmless, we reverse and remand for a new trial.

## I. Background

Harmon was taking care of his three and one-half month-old daughter, H.H., while his then wife was working. Harmon's wife stopped home briefly during a break in her work day and noted that everything seemed fine with H.H. Specifically, she did not see any kind of injury on the child.

Harmon picked his wife up from work later that day. At that time, his wife noticed that H.H.'s eye was "a little red," her head was swollen, and she seemed unusually lethargic. Over the course of the evening, H.H.'s head continued to be swollen, one eye swelled shut, and the other eye began to swell. Harmon's wife asked Harmon how this happened, but he said that he did not know. Ultimately, and after some resistance by Harmon, Harmon and his wife took H.H. to the hospital, where she was then admitted.

Doctors at the hospital examined H.H. and determined that she had a skull fracture, fractured ribs, and an injury to her adrenal gland. The doctors also observed a number of bruises on H.H.'s body. A pediatrician was consulted, and she concluded that H.H. had suffered "nonaccidental trauma," which she equated with "child physical abuse." At trial, she explained that "child physical abuse" is a medical diagnosis and that such a diagnosis is not a comment on how precisely the injuries were inflicted, although she noted her view that the injuries here were caused by blunt force trauma.

Police were called to the hospital and spoke with Harmon. After offering varying explanations as to how H.H. was injured, Harmon stated that he had dropped her while bathing her. He maintained, however, that it was accidental.

Harmon was subsequently charged with one count of knowing or reckless child abuse.

His principal theory of defense was that H.H.'s injuries resulted from an accident, not knowing or reckless conduct. Consistent with that theory, in opening statement, Harmon's counsel denied that Harmon had committed a crime. Counsel conceded, however, that Harmon may have been careless or negligent:

> [N]o one over here at this defense table is trying to minimize anything about [H.H.'s] injuries, and frankly if at the end of this trial you conclude that the way Jamie Harmon was bathing his daughter was negligent or careless, the defense can live with that kind of conclusion, but what we can't live with is the suggestion or the conclusion that Mr. Harmon intentionally hurt his three month old daughter because that's the prosecution trying to make this case into something that it is not because that never happened and that's not true.

During the first day of Harmon's trial, a juror submitted a note to the court that read:

> I wish to ask why it is necessary to spend all this time calling witnesses and going round & round on points and facts that both sides agreed to in their opening remarks. It would seem that the disagreement is only over what level of guilt is indicated. Can not the rest be stipulated? Can we not focus on the distinctions of motive and actions?

The court notified counsel of the note and its contents and opined that the court did not need to take action with respect to the juror's comment. The prosecutor agreed, but Harmon's counsel asked that the juror be excused for cause, because the juror had already decided Harmon's guilt. Counsel also asked that the juror be identified for the record. The prosecutor objected and argued, incorrectly, that Harmon's opening statement was, "[Y]ou may find the defendant guilty." The court then concluded that the juror was merely responding to "themes that were expressed in opening statement," that it would be inappropriate to inquire of the juror regarding the note, and that no action was necessary. Harmon moved for a mistrial, but the court denied that motion for the reasons it had expressed.

At the conclusion of the evidence, the court agreed to instruct the jury not only on the originally charged offense but also on the lesser included charge of criminally negligent child abuse, pursuant to an instruction tendered by the prosecution. Harmon, however, continued to assert that he was not guilty of any crime. Thus, although Harmon's counsel acknowledged in closing argument that he previously said Harmon would accept a finding that he was careless or negligent, counsel argued, in substance, that Harmon was not negligent under applicable criminal law and, thus, was not guilty of any crime.

The jury convicted Harmon of the greater charge, and he now appeals.

## II. Juror Note

Harmon first contends that the trial court deprived him of his constitutional right to a fair trial when it failed to take action after receiving the above-described juror · note. Specifically, Harmon argues that the court erred in failing to excuse the juror or, alternatively, in failing to grant a mistrial. He further asserts that at a minimum, the court was required to take some action to ensure that the jury remained fair and impartial. We agree that the trial court's failure to take any action was error, and we conclude that this error was not harmless beyond a reasonable doubt, thus entitling Harmon to a new trial.

The Due Process Clauses of the United States and Colorado Constitutions guarantee every criminal defendant the right to a fair trial, including an impartial jury. *Bloom v. People*, 185 P.3d 797, 805 (Colo. 2008). That right is violated if the court fails to remove a juror who is biased against the defendant. *People v. Chavez*, —— P.3d ——, ——, 2011 WL 2899625 (Colo.App.2011). That right may also be violated if jurors have improperly relied on extraneous information or if the court is made aware of possible juror misconduct and fails to investigate that allegation. *See Dunlap v. People*, 173 P.3d 1054, 1090–91 (Colo.2007) (reviewing trial court's handling of alleged juror misconduct for constitutional error); *see also Williams v. Bagley*, 380 F.3d 932, 949 (6th Cir.2004) (noting that under certain circumstances, a trial

court has a constitutional duty to inquire into allegations of juror misconduct or potential juror bias). Because we view these circumstances as analogous to those at issue here, we review the question before us under the constitutional error standard. Under this standard, we must reverse Harmon's conviction unless we are persuaded that the error was harmless beyond a reasonable doubt. *Dunlap*, 173 P.3d at 1091. An error is not harmless beyond a reasonable doubt if there is a reasonable possibility that the defendant could have been prejudiced by that error. *Leonardo v. People*, 728 P.2d 1252, 1257 (Colo.1986). Conversely, an error is harmless beyond a reasonable doubt only if the guilty verdict was surely unattributable to the error. *People v. Flockhart*, —— P.3d ——, ——, 2009 WL 4981910 (Colo.App.2009) (*cert. granted* Feb. 22, 2011).

Here, as an initial matter, we note that the parties have advanced differing interpretations of the juror's note. Notwithstanding these different interpretations, it is beyond dispute that the note fairly suggests that the juror had reached a conclusion regarding Harmon's guilt. Accordingly, the note reflects a fundamental misunderstanding of the juror's role and his or her duty to reserve any judgment regarding guilt until he or she could deliberate with the other jurors. *Cf. Chavez*, —— P.3d at —— (noting that, during voir dire, "[a] trial court should resolve any doubts as to a prospective juror's impartiality by excusing the juror").

 Given the possibility of such a fundamental misunderstanding on the juror's part, we must next determine whether the trial court erred in taking no action in response to this note. The question of what a trial court is to do when a single juror expresses an opinion of guilt before he or she has heard all of the evidence and before the jury begins deliberations appears to be a matter of first impression in Colorado. Here, the trial court expressed the view that inquiry of the juror in these circumstances would have been inappropriate. Several cases, however, suggest otherwise. *See People v. Robles*, —— P.3d ——, ——, 2011 WL 1195773 (Colo.App. 2011) (*cert. granted* Sept. 12, 2011) (noting that CRE 606(b) applies to inquiries into

juror *deliberations*, both before and after the verdict is rendered); *see also Larson v. State*, 79 P.3d 650, 653 (Alaska Ct.App.2003) (noting that Alaska R. Evid. 606(b) does not apply when the issue of potential juror misconduct is litigated before the jury returns its verdict); *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354, 357 (2000) (holding that Ark. R. Evid. 606(b) applies only to events occurring during a jury's formal deliberations); *cf. United States v. Brooks*, 569 F.3d 1284, 1288 (10th Cir.2009) (noting that a court, in its discretion, may hold a hearing to assess allegations of juror bias); *Hayes v. State*, 647 So.2d 11, 14 (Ala.Crim.App.1994) (noting that a trial court has a duty to conduct a reasonable investigation of alleged jury irregularities, including a painstaking and careful inquiry into the alleged juror misconduct).

We, however, need not decide this specific question. Rather, it is sufficient for us to conclude that when the juror here appeared to have misunderstood whether Harmon had admitted guilt of a crime, it was incumbent on the trial court to take some action to correct any such misunderstanding, to avoid the possibility of allowing a biased juror to sit on Harmon's jury. *Cf. People v. Manier*, 197 P.3d 254, 259 (Colo.App.2008) (although there is a presumption that a jury understands and heeds the court's instructions, that presumption disappears when the jury asks a question demonstrating a fundamental misunderstanding of an instruction it has been given: "In such circumstances, if the question is otherwise proper and the jurors cannot be adequately informed simply by directing their attention to some portion of the original instructions, a trial court has an obligation to clarify the matter in a concrete and unambiguous manner."); *see also Cherry*, 20 S.W.3d at 359 ("For even one juror to prematurely decide a defendant's guilt before hearing all the evidence and being instructed on the law, deprives that criminal defendant of his right to a fair and impartial jury.").

Without intending to provide an exhaustive list as to what corrective action the trial court might have taken here, we note that the court might have (1) spoken to the jurors, (2) advised them that it had received a note suggesting possible confusion regarding Har-

mon's opening statement, (3) reminded them that Harmon had asserted that he was not guilty, that he must be presumed innocent, and that the burden of proof remained on the prosecution, and (4) inquired as to whether any of them would have difficulty affording Harmon, until the end of trial, the presumption of innocence and requiring the prosecution to prove Harmon's guilt beyond a reasonable doubt. The court also could have reminded the jurors that the opening statements of counsel are not evidence. *See* CJI–Crim. 1:03 (1983). And the court could have reiterated its direction to the jury that it must consider all of the evidence produced during the trial and determine the facts based on that evidence. Alternatively, the court could have identified and dismissed the juror who sent the note and substituted one of the two alternate jurors. In the circumstances presented here, we conclude that the failure to take any such corrective action was error.

■ The question thus becomes whether this error was harmless beyond a reasonable doubt, particularly when (1) the jury was ultimately instructed on the lesser included offense of criminally negligent child abuse, (2) Harmon's counsel had stated in opening that Harmon could "live with" a finding of carelessness or negligence, and (3) the jury convicted Harmon of the greater offense. Although we perceive this question as close, on the record before us we cannot conclude that the error was harmless.

Here, contrary to the People's characterization of defense counsel's opening statement, Harmon never conceded that he was guilty of criminally negligent child abuse. To the contrary, in opening statement, Harmon's counsel asserted Harmon's innocence of any crime. Likewise, in closing argument, counsel emphasized that although he had said that Harmon could live with a finding that he was careless or negligent, he did not concede that Harmon was negligent under the applicable criminal law. In short, Harmon maintained throughout his trial that he was not guilty of any crime.

Notwithstanding the foregoing, the juror at issue had already expressed an apparent belief that Harmon had conceded guilt at least to criminally negligent child abuse, and having done so, the juror was more likely to adhere to his or her opinion and approach this case with less than a fully open mind as to Harmon's claims of innocence. *See Flockhart,* —— P.3d at —— (noting the likelihood of such conduct by a juror who expresses views in the presence of other jurors). Moreover, such a premature conclusion, particularly when arrived at before Harmon had been given a chance to present his evidence and before the court had instructed the jury as to the applicable law, would have effectively shifted the burden to Harmon to change the juror's already-formed opinion. *Id.* In these circumstances, we cannot conclude that the trial court's error was harmless beyond a reasonable doubt.

■ Finally, we must determine the appropriate remedy. The People argue that were we to determine that the trial court erred, we should remand this case to that court to conduct a hearing. We conclude, however, that such a remedy would be impracticable here, because the trial took place over three years ago, there is no record of the identity of the juror who submitted the note at issue, and any inquiry at this point would necessarily require the trial court to delve into the mental processes of jurors who had reached a verdict, in violation of CRE 606(b).

For these reasons, we conclude that Harmon is entitled to a new trial.

### III. Photograph Displayed During Opening Statement

■ Because the issue is likely to arise again on remand, we address Harmon's contention, which was preserved by his objection at trial, that the trial court erred in allowing the prosecution to show during opening statement a photograph of H.H. depicting her bruises and showing her attached to hospital monitoring devices. We perceive no abuse of discretion.

■ A trial court has discretion to determine what will be permitted during the opening statements of counsel. *People v. Bustos,* 725 P.2d 1174, 1177 (Colo.App.1986). The court also has discretion to determine

"whether otherwise relevant photographs are unnecessarily inflammatory or unfairly prejudicial to the defendant," and we will not overturn such a decision absent an abuse of that discretion. *People v. Viduya*, 703 P.2d 1281, 1291 (Colo.1985); *see also People v. Maass*, 981 P.2d 177, 187 (Colo.App.1998) ("Photographs are not inadmissible simply because the defendant stipulates to the matter depicted or because they visually depict testimony already given. Further, otherwise relevant photographs are not rendered inadmissible solely because they reveal shocking details of the crime.") (citation omitted).

The precise question presented here appears to be a matter of first impression in Colorado. Courts in other jurisdictions, however, have concluded, in similar circumstances, that trial courts did not abuse their discretion when they permitted a party to display photographs of a crime victim or other items of tangible evidence during opening statements, particularly when, as here, such items were relevant and were ultimately admitted in evidence at trial. *See, e.g., Sanders v. Vare*, No. 3:06–cv–0064–RCJ–RAM, 2009 WL 3062681, at *3–4 (D.Nev. Sept.18, 2009) (unpublished order) (holding that the jury was not unfairly prejudiced when a photograph of the victim was published to the jury during the prosecution's opening statement, where the photograph was relevant, substantiated later by the evidence, and ultimately admitted into evidence at trial); *Billings v. State*, 278 Ga. 833, 607 S.E.2d 595, 598 (2005) (holding that the trial court did not abuse its discretion in allowing the prosecution to use a photograph of the deceased victim in life during its opening statement, where the photograph was ultimately authenticated and admitted into evidence); *Commonwealth v. Parker*, 591 Pa. 526, 919 A.2d 943, 950–51 (2007) (holding that the trial court's decision to permit the prosecution to display a handgun during opening statement was well within the court's discretion, where the gun was ultimately admitted during the prosecution's case-in-chief; in so holding, the appellate court stated, "We fail to see the distinction between verbally describing that evidence and physically picking up the evidence and displaying it to the jury as the attorney describes what he intends to prove

with regard to that particular piece of evidence.").

We are persuaded by the reasoning of these cases and thus conclude, on the facts presented here, that the trial court did not abuse its discretion in allowing the prosecution to show the photograph at issue during its opening statement. The primary purpose of an opening statement is to provide the jury with a brief introductory outline of what counsel expects the evidence will show, and the photograph at issue illustrated what the prosecution intended to show here. *See Bustos*, 725 P.2d at 1177. Moreover, Harmon has not demonstrated that the photograph was so inflammatory that the trial court's decision to allow the prosecution to use it during opening statement was an abuse of discretion.

### IV. Comment on Excluded Evidence and Expert Testimony

■ Harmon next asserts that his right to a fair trial was violated when a prosecution witness mentioned a previous incident in which Harmon had dropped H.H. while bathing her, notwithstanding the fact that the trial court had excluded such evidence. Because this issue is unlikely to arise again on remand, we decline to address it. *See People v. Garcia*, 113 P.3d 775, 785 (Colo.2005).

■ Finally, Harmon asserts that the trial court erred by admitting certain expert testimony regarding the medical diagnoses of nonaccidental trauma and child physical abuse (1) because the court did not make the specific findings required by *People v. Shreck*, 22 P.3d 68, 78 (Colo.2001), and (2) because such evidence was misleading and unreliable and improperly reflected a legal opinion that the expert was unqualified to give. The People respond, among other things, that Harmon's objections, although initially raised in a motion in limine, were waived because the trial court indicated that what expert testimony would ultimately be permitted at trial depended on the laying of a proper foundation and Harmon did not object to the testimony at issue after the prosecution laid its foundation. Indeed, defense counsel expressly accepted the expert "as a

board certified pediatrician and an expert in child abuse and neglect."

Because this issue, as presented to us, involves a substantial question of waiver based on defense counsel's conduct at trial, we cannot say that it is likely to arise again on remand, at least in the form in which it is now presented to us. Accordingly, we decline to address it. *Garcia,* 113 P.3d at 785

## V. Conclusion

For these reasons, the judgment is reversed and the case is remanded for a new trial.

Judge DAILEY and Judge GRAHAM concur.