2012 COA 13

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Theodore Ramone HERRERA, Defendant–Appellant.**

No. 09CA0544.

Colorado Court of Appeals, Div. I.

Feb. 2, 2012.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

¶ 1 Defendant, Theodore Ramone Herrera, appeals the trial court's judgment of conviction entered upon jury verdicts finding him guilty of two counts of sexual assault on a child and two counts of sexual assault-pattern of abuse. He also appeals the sentences imposed upon his convictions. We remand for further proceedings.

## I.  Background

¶ 2 In 2007, Herrera was accused of sexually abusing his male cousin, D.R., on several occasions when D.R. was about twelve years old and his younger female cousin, V.R., on five occasions when she was between the ages of eight and fourteen.  Because Herr-

era was at least four years older than both victims during the multiple alleged incidents, he was charged with two counts of sexual assault on a child and two counts alleging that the assaults were part of a pattern of abuse.

¶ 3 Prior to Herrera's trial, he filed a motion under the rape shield statute, section 18–3–407, C.R.S.2011, requesting leave to admit evidence of V.R.'s prior allegations of sexual assault and a motion for discovery of any such evidence. After a pretrial hearing on the matter, the trial court ordered the People to disclose any information regarding known, false allegations of or investigations concerning sexual assault of V.R.

¶ 4 After the hearing, V.R.'s mother informed the prosecutor that V.R. had made prior allegations of sexual assault which were likely reported in her social services records. The prosecutor, believing "it was incumbent upon [him]" to try to obtain V.R.'s records after the mother's disclosure, retrieved records from three social services agencies. After reviewing them, he tendered them to the trial court with letters advising that, because such records may have contained information material to Herrera's defense, the trial court should conduct an in camera review of the records to determine whether they should be disclosed to Herrera.

¶ 5 At a separate hearing on this matter, the prosecutor again requested that the trial court review V.R.'s records in camera. However, the trial court stated that the request, and the accompanying burden to show the necessity of such a review, was Herrera's and ordered Herrera to file a separate motion for discovery of V.R.'s social services records. He timely filed such a motion, which the trial court denied because it failed "to present the sufficient evidentiary hypothesis to trigger the requested review."

¶ 6 The People, through a second prosecutor, then filed a request for rehearing on the trial court's decision not to conduct an in camera review of the records. Herrera joined in the People's request. The trial court again denied the request. Its refusal to review V.R.'s records in camera is the primary focus of this appeal.

¶ 7 In November 2008, a jury trial was held at which both D.R. and V.R. testified. To show the jury how they appeared at the approximate time of the alleged sexual assaults, the People introduced two photographs of them as children at their first communion. The admissibility of these photographs is also at issue on appeal and presents a matter of first impression.

¶ 8 At the conclusion of trial, the jury convicted Herrera of all counts. The trial court sentenced him to two consecutive sentences of twelve years to life in prison, one sentence for each count of sexual assault of a child. Herrera also appeals the trial court's imposition of consecutive sentences.

## II. In Camera Review of Social Services Records

¶ 9 Herrera contends that the trial court abused its discretion in denying the requests made by both him and the People to conduct an in camera review of V. R.'s social services records to determine whether they contained information material to his case that should have been disclosed prior to trial. Because the People made a requisite threshold showing that in camera review of the records was necessary and Herrera joined in this request, we conclude that the trial court abused its discretion, and we remand the case for in camera review of the records.

### A. Standard of Review

¶ 10 We review for abuse of discretion a trial court's resolution of discovery issues, including its decision whether to review social services records in camera. *People in Interest of A.D.T.,* 232 P.3d 313, 316 (Colo. App.2010).

¶ 11 A trial court abuses its discretion only when it acts in a manner that is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Hagos,* 250 P.3d 596, 608 (Colo.App.2009).

### B. Analysis

¶ 12 Section 19–1–307, C.R.S.2011, mandates that minors' abuse and neglect social services records remain confidential, subject to several exceptions. *People v. Jowell,* 199

P.3d 38, 42 (Colo.App.2008). Relevant here are three such exceptions which illustrate that "[t] he statute does not provide equal access to social services records." *Id.*

¶ 13 Section 19–1–307(2)(a), C.R.S.2011, grants certain government agents, including prosecutors, open access to these records. In contrast, members of the public, including defendants in criminal cases, generally have no right of access to such records. Rather, a defendant only may access information contained in the records that a court has decided "is necessary for the resolution of an issue then pending before [the court]." § 19–1–307(2)(f) C.R.S.2011. Finally, however, courts themselves are limited to accessing social services records "upon ... finding that access to such records may be necessary for determination of an issue before [it]," and even then, only by means of an in camera review. *Id.*

¶ 14 Accordingly, disclosure to a criminal defendant of information in confidential social services records requires a two-part inquiry by the trial court. First, it must make a threshold determination whether to conduct an in camera review. *Jowell*, 199 P.3d at 43. Because a court may violate a defendant's due process rights by failing to conduct an in camera review of potentially material information, it "should approach this threshold inquiry liberally and conduct [such a] review whenever it reasonably appears that the records may contain discoverable information." *Id.; see A.D.T.*, 232 P.3d at 317; *see also Exline v. Gunter*, 985 F.2d 487, 490 (10th Cir.1993). If a court decides to undertake an in camera review, it must then determine what discoverable information in the records, if any, must be disclosed to the defendant. *A.D.T.*, 232 P.3d at 316.

¶ 15 Either a prosecutor or a defendant may request court-ordered disclosure of social services records. The procedures by which each may request disclosure differ. *See Jowell*, 199 P.3d at 42–43.

¶ 16 A prosecutor is legally and ethically obligated to disclose to a criminal defendant evidence or information of which he or she learns that is favorable to the defendant and material to either guilt or punishment, including exculpatory and impeaching evidence. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *see* Crim. P. 16(I)(a)(2); Colo. RPC 3.8(d); *see also Smith v. Cain*, — U.S. —, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012) (reaffirming *Brady*). However, section 19–1–307 simultaneously constrains a prosecutor from disclosing to the defendant such information if it is contained in confidential dependency and neglect records. To adequately protect the rights of the defendant without violating the state's interest in the confidentiality of these sensitive records, a trial court should review any records that contain evidence a prosecutor reasonably believes to be exculpatory or impeaching. *A.D.T.*, 232 P.3d at 316; *Jowell*, 199 P.3d at 43. Additionally, a court should also review records believed to contain inculpatory information that would materially assist a defendant in preparing a defense. *Jowell*, 199 P.3d at 43 (determining that such information is necessary for the resolution of court matters under section 19–1–307(2)(f)).

¶ 17 In contrast, a criminal defendant who lacks access by right to these confidential records reasonably bears a more sizeable burden in requesting the court to review and ultimately disclose information in the records. A defendant must identify relevant dependency and neglect records and request the trial court to review them in camera based upon his or her belief that information contained therein is necessary for determination of any issue pending before the court. § 19–1–307(2)(f). The request must be more than a mere fishing expedition. *See A.D.T.*, 232 P.3d at 316. To establish necessity, the defendant must identify the type of information sought, and make an offer of proof establishing "an evidentiary hypothesis as to how the requested information would be relevant to the ... case." *People v. Turley*, 870 P.2d 498, 502 (Colo.App.1993).

¶ 18 Herrera contends that the trial court erred in refusing to review V.R.'s social service records after the People initially requested an in camera review based upon their belief that the records contained exculpatory, impeaching, and inculpatory informa-

tion. He contends that the trial court misconstrued the statutory scheme in shifting the burden to him to establish the necessity for review, and in ultimately refusing to review the records in camera based on its finding that he had failed to establish a sufficient evidentiary hypothesis.

¶ 19 No published Colorado appellate decision has addressed whether a defendant, by joining a prosecutor's request for in camera review of confidential social services records, may rely on the prosecutor's statement that information contained therein may be material to the defense. We now conclude that he or she may do so.

■ ¶ 20 Where a prosecutor has requested the court's in camera review of confidential social services records based on a reasonable belief that they contain exculpatory, impeaching, or inculpatory information that would materially assist in preparing the defense, we conclude that the defendant's burden to request disclosure has been satisfied. Three factors support our conclusion. First, the prosecutor's request establishes both that relevant dependency and neglect records exist, and that they may contain information necessary for determination of any issue before the court. *See* § 19–1–307(2)(f). Second, there is no danger of a fishing expedition when the prosecutor, with open access to the relevant files, seeks the review. *See* *A.D.T.*, 232 P.3d at 316. Finally, requiring a defendant to posit an evidentiary hypothesis for the disclosure of confidential records would be unnecessary when the prosecutor, who necessarily has greater access, has already asserted a basis for in camera review. *Turley*, 870 P.2d at 502.

¶ 21 In this regard, we conclude that *Turley* is distinguishable. There, the defendant requested in camera judicial review of mental health and social services records whose very existence had not been established. The division also concluded that the defendant had "failed to establish an evidentiary hypothesis as to how the requested information would be relevant to the sexual assault and kidnapping prosecution and necessary for the determination of an issue in his case." *Id.*

■ ¶ 22 Here, however, it is undisputed that social services records exist, and the prosecutor's request for in camera review of those records by the court supplants the need for Herrera to establish an evidentiary hypothesis, because the prosecution's request was based on review of the social services records in question.

¶ 23 The People advised the court of three volumes of records from separate social services departments. It noted in letters to the court that most of the records from one agency were "potentially relevant to this case for either inculpatory, [exculpatory], or impeachment purposes," whereas records from the other agencies "may contain exculpatory or impeachment material relevant to the defense of this case." On the record, the prosecutor also made the following offer of proof at a pretrial hearing on the matter:

[Based on comments made by V.R.'s mother to me regarding] the outcry that the female victim made to her caseworker at social services ... I thought it was incumbent on me to try to obtain those social service records, focusing especially on the outcry of prior allegations so that I could at least—I felt it was my ethical obligation to follow up on that to see whether or not there was anything to follow up on ... and if it was something I should have gotten the Court to review, again, under the *Jowell* case and under 19–1–307....

Based on those records, it is—it was my feeling that there was sufficient information in there at least defense counsel probably needed to at least follow up on, especially regarding the Rape Shield.... There is also other information in there which, frankly may be either inculpatory or exculpatory or impeachment information. That's something the Court is going to need to understand.

But it did become pretty clear to me that the file that I thought was pretty complete and the discovery that the defense [received] ... probably isn't.

After the trial court denied Herrera's motion for disclosure, the People also requested a rehearing on the matter and expressed their genuine concern that failure to disclose these

documents would violate their obligations of disclosure to Herrera.

¶ 24 Accordingly, we conclude that the People articulated a reasonable belief that V.R.'s records contained evidence that may have been exculpatory, may have materially assisted in preparing Herrera's defense, or may have been used to impeach V.R.'s credibility. *See Jowell,* 199 P.3d at 43.

¶ 25 We therefore also conclude that Herrera, who joined the People's request for in camera review of the social services records and endorsed the People's argument, met his burden for requesting review and disclosure of V.R.'s records. *See Jowell,* 199 P.3d at 43. The trial court's refusal to conduct an in camera review despite this requisite threshold showing amounted to an abuse of discretion. *See A.D.T.,* 232 P.3d at 317.

¶ 26 Accordingly, we remand this case to the trial court with directions that it conduct an in camera review of the three volumes of V.R.'s social services records and determine, by appropriate findings, whether any of the information therein might have been necessary to the determination of an issue before it and whether a new trial is required. *Id.* at 318.

## III. Admission of Communion Photographs

¶ 27 Herrera next contends that the trial court abused its discretion in admitting into evidence photographs of V.R. and D.R. taken at their first communion in March 2001 because they were irrelevant and highly prejudicial.[1] We disagree.

### A. Standard of Review

¶ 28 We review for abuse of discretion a trial court's admission of evidence over a party's contemporaneous objection. *Kaufman v. People,* 202 P.3d 542, 553 (Colo.2009). In reviewing the trial court's determination, we assume the maximum probative value and the minimum prejudicial effect reasonably to be expected. *People v. Webster,* 987 P.2d 836, 840 (Colo.App.1998).

### B. Analysis

¶ 29 To be admissible, evidence must be relevant. CRE 402. Evidence is logically relevant as long as it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *accord People v. Rath,* 44 P.3d 1033, 1038 (Colo.2002). A trial court nonetheless may exclude even logically relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403; *accord Rath,* 44 P.3d at 1038.

¶ 30 Accordingly, photographs are admissible in evidence if they depict relevant facts and are not unnecessarily gruesome and inflammatory so as to incite the jury to unfair prejudice against the defendant. *See People v. Moreland,* 193 Colo. 237, 243, 567 P.2d 355, 360 (1977); *Hampton v. People,* 171 Colo. 153, 166, 465 P.2d 394, 401 (1970).

¶ 31 Here, Herrera contends that the first communion photographs depicting V.R. and D.R. six years before trial, within a year or so of the date that the alleged sexual abuse began, were irrelevant to the People's case against him because they did not help to establish any necessary or disputed element of the crimes. We are not persuaded.

¶ 32 Initially, we note that photographs of a victim may have probative value even if they relate to an undisputed matter. *People v. White,* 199 Colo. 82, 84, 606 P.2d 847, 849 (1980) ("[p]hotographs are not inadmissible solely because the defendant has stipulated to these matters, or because these matters have been established through the testimony of prosecution witnesses"). Thus, the prosecution was entitled to show what the victims looked like, even if their ages at the time of the alleged sexual assaults were undisputed, provided that the photographs were relevant and not unfairly prejudicial.

¶ 33 "Photographs may be used to graphically portray the scene of a crime, the

---

1. We address this issue even though we remand for further proceedings in part II. If the trial court determines that Herrera is entitled to a new trial, this issue is likely to arise in retrial. If the trial court concludes that Herrera is not entitled to a new trial, following its review of the social services records in camera, resolution of this issue now will promote judicial efficiency.

appearance and condition of the [victim], and any other matters which are competent for a witness to describe in words." *Moreland,* 193 Colo. at 243, 567 P.2d at 360.

¶ 34 Photographs of victims illustrating the appearance of the victim's body at the scene of the crime or the nature and location of the victim's injuries are generally relevant because they tend to show whether and how the offenses were committed. *See, e.g., People v. Mattas,* 645 P.2d 254, 260 (Colo.1982) (photographs of victim's injuries were relevant to causation and to establish that victim had been injured by force); *People v. Raglin,* 21 P.3d 419, 427 (Colo.App. 2000) (photographs showing the location and size of homicide victim's wounds held admissible); *People v. Crespin,* 631 P.2d 1144, 1148 (Colo.App.1981) (photographs of victim of sexual assault and homicide were relevant "in showing the crime scene, illustrating the cause of death and as evidence of the alleged sexual assault").

¶ 35 In contrast, the photographs of V.R. and D.R. were not admitted for such purposes. They illustrate no injuries, no crime scene, and no theory of the case, and thus have no relevance to whether or how Herrera assaulted the victims.

¶ 36 Rather, the People offered the photographs into evidence to illustrate to the jury V.R.'s and D.R.'s appearances closer to the time when the sexual assaults had begun, at eight years old and twelve years old, respectively, as compared to their appearances as the sixteen- and eighteen-year-olds who testified at trial. Although Colorado's appellate courts have considered the admissibility of photographs in other contexts, they have not considered whether photographs illustrating the appearances of victims at the age of sexual abuse are admissible.

¶ 37 Accordingly, we turn to other jurisdictions for guidance on this matter of first impression. *People v. Weiss,* 133 P.3d 1180, 1187 (Colo.2006).

¶ 38 Courts in other jurisdictions have almost uniformly held that trial courts do not abuse their discretion in admitting photographs that depict victims of sexual assault when the alleged abuse began. They have so held for a variety of reasons. *Johnston v. Commonwealth,* (Ky. No. 2001–SC–0858–MR, 2003 WL 1389109, Mar. 20, 2003) (unpublished opinion) (similar to in-life photographs of homicide victims, photograph of sexual assault victim admissible to show the jury how she appeared when the alleged offenses were committed); *Thompson v. State,* 181 Md.App. 74, 955 A.2d 802, 814–15 (Md.Ct.Spec.App.2008) (photograph of victim who testified at age thirty-two depicting her at age ten was relevant to illustrate to jury "more fully who the victim in this case was"), *aff'd,* 412 Md. 497, 988 A.2d 1011 (2010); *People v. Khan,* 88 A.D.3d 1014, 931 N.Y.S.2d 393, 394 (2011) (photographs admitted "to illustrate the victim's age when the sexual contact allegedly began and to corroborate testimony regarding the change in the victim's physical appearance"); *State v. Klein,* 593 N.W.2d 325, 327 (N.D.1999) (photograph was relevant to show what victim looked like at the time of the offense; his young age and small size were also probative of victim's fear of reporting); *Spruiell v. State,* (Tex.App. No. 05–01–01414–CR, 2003 WL 21508441, July 2, 2003) (unpublished opinion) (concluding that photographs had "some tendency to prove that [victim] was a child under the age of fourteen at the time of the alleged offenses"); *see also United States v. White Calf,* 634 F.3d 453, 460 (8th Cir. 2011).

¶ 39 The rationales applied in these cases persuade us that the appearance of a sexual assault victim when the alleged sexual abuse began is relevant to illustrate the child's age at that time, a material element of the crime of sexual assault of a child, and to show the jury more clearly how the child appeared at the time of the alleged sexual assaults. Because a competent witness could describe such relevant information to a jury, we conclude that the first communion photographs depicting V.R. and D.R. at the young age when Herrera began sexually abusing them were logically relevant.

¶ 40 Alternatively, Herrera contends that the first communion photographs, each depicting one of the victims dressed formally, smiling, and clasping his or her hands in apparent prayer, were unduly inflammatory

and provoked sympathy in the jury. He maintains that the photographs were so inflammatory that the danger of unfair prejudice to him substantially outweighed any probative value they may have possessed such that the trial court's admitting them violated CRE 403 and constituted an abuse of discretion. We disagree.

¶ 41 Unfairly prejudicial evidence has an "undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002) (quoting *People v. District Court*, 785 P.2d 141, 147 (Colo.1990)). A trial court has broad discretion to determine whether otherwise relevant photographs are unfairly prejudicial to the defendant, and we will not overturn such a decision absent an abuse of discretion.[2] *People v. Viduya*, 703 P.2d 1281, 1291 (Colo.1985); *accord People v. Harmon*, —— P.3d ——, ——, 2011 WL 4837289 (Colo.App.2011).

¶ 42 While the photographs of the children apparently praying may have evoked sympathy in the jury, we are not persuaded, however, that their admission was unfairly prejudicial so as to constitute an abuse of discretion. *See District Court*, 785 P.2d at 147 (we must afford evidence maximum probative value and minimum unfair prejudicial effect when reviewing under CRE 403); *see also People v. Thorpe*, 641 P.2d 935, 943 (Colo.1982) (photos were "not so shocking that their probative value was outweighed by the likelihood that they would inflame the passions of the jury or cause them 'to abandon their mental processes and give expression to their emotions' " (quoting *Archina v. People*, 135 Colo. 8, 31, 307 P.2d 1083, 1095 (1957))); *Mixon v. State*, 1999 WL 8009, *5 (Tex.App. No. 05–97–00420–CR, Jan. 8, 1999) (unpublished opinion) (defendant did not show that admission of photographs of victim on day of her first communion would "cause an average juror to become inflamed or biased").

## IV.  Consecutive Sentences

¶ 43 Finally, Herrera contends that the trial court abused its discretion in sentencing him to two consecutive terms of twelve years to life in prison because it failed to articulate on the record its reasons for imposing the sentences to run consecutively rather than concurrently.[3] Again, we disagree.

### A.  Standard of Review

¶ 44 Because a trial court is more familiar with a defendant and the circumstances of the case than a reviewing court, we will not overturn its sentencing decision absent a clear abuse of discretion. *People v. Fuller*, 791 P.2d 702, 708 (Colo.1990).

¶ 45 A manifestly arbitrary, unreasonable, or unfair sentencing decision would establish a trial court's abuse of discretion. *See, e.g., People v. Jenkins*, 674 P.2d 981, 984 (Colo.App.1983) (imposing excessive sentence was an abuse of discretion), rev'd on other grounds, 687 P.2d 455 (Colo.1984).

### B.  Analysis

¶ 46 A trial court maintains broad discretion to impose consecutive sentences on multiple offenses not supported by identical evidence. *People v. O'Shaughnessy*, 275 P.3d 687, 697 (Colo.App.2010) (*cert. granted* Oct. 18, 2010); *see Fuller*, 791 P.2d at 708; *People v. Dixon*, 950 P.2d 686, 689 (Colo.App. 1997). In its discretion, for example, a trial court may impose consecutive sentences where multiple victims were involved. *People v. Hogan*, 114 P.3d 42, 58 (Colo.App. 2004). Provided that the sentencing court "state[s] on the record the basic reasons for imposing the sentence," we must afford its sentencing decision deference. *Fuller*, 791 P.2d at 708 (quoting *People v. Watkins*, 200 Colo. 163, 168, 613 P.2d 633, 637 (1980)); *accord People v. Howell*, 64 P.3d 894, 898 (Colo.App.2002).

---

2.  The trial court's exclusion of a third photograph, showing V.R., D.R., and their younger brother standing before a statute of the Virgin Mary, illustrates a prudent exercise of such discretion.

3.  We address this issue because it will promote judicial efficiency in the event that the trial court determines on remand, after in camera review of the social services records, that Herrera is not entitled to a new trial.

¶ 47 Herrera contends that the trial court's imposition of consecutive sentences here does not merit such deference because the trial court failed to sufficiently state on record the basic reasons for its sentencing decision. We disagree.

¶ 48 At the sentencing hearing, the People argued in relevant part:

¶ 49 "[T]he consecutive sentences are only appropriate because there are multiple victims and it's appropriate to impose a lengthy sentence for each one of them." The trial court then imposed consecutive sentences of twelve years to life for the sexual assault on V.R. and the sexual assault on D.R. The trial court found that "the nature of the offenses ... by their very definition, [were] aggravated" because they "occurred over some period of time with respect to both victims" and involved more than just sexual touching.

¶ 50 While it might have been preferable for the trial court to express more clearly why it imposed consecutive sentences on Herrera, we are able to glean from these portions of the record the trial court's reasons: the existence of the People's request, two separate child victims, and aggravated circumstances. Accordingly, we will not disturb the sentence. *See People v. Broga*, 750 P.2d 59, 62 (Colo.1988).

### V. Conclusion

¶ 51 In summary, the case is remanded to the trial court to review in camera the social services records at issue and to determine whether information therein might have been necessary to the determination of an issue before it and, therefore, should have been disclosed to Herrera. If the court identifies such information, it must disclose the relevant documents to Herrera. *A.D.T.*, 232 P.3d at 318.

¶ 52 Should relevant information be found in the records, the trial court must also give Herrera an opportunity to establish that a reasonable probability exists that earlier disclosure of these records would have changed the outcome of the proceedings. *Id.* The manner in which the court affords him this opportunity, including whether to hold a hearing or to take additional evidence, is within its discretion. *Id.* If it finds that it is reasonably probable that the outcome would have been different, it must grant Herrera a new trial, subject to the People's right to appeal that determination. *Id.*

Otherwise, if the trial court concludes that V.R.'s records contain no information material to Herrera's defense or, alternatively, concludes that any error in not disclosing such information was harmless, the judgment and sentence will stand affirmed subject to Herrera's right to appeal those findings of the trial court.

Judge DAILEY and Judge FOX concur.